22259

GENERAL MOTORS ACCEPTANCE CORPORATION, Respondent, v. Maxann C. McMINN, Appellant.

(328 S. E. (2d) 472)

Supreme Court

*David E. Simpson,* of *Piedmont Legal Services, Inc.,* Rock Hill, *for appellant.*

*Roy McBee Smith,* Spartanburg, *for respondent.*

Submitted Jan. 23, 1985.

Decided March 13, 1985.

HARWELL, Justice:

The respondent General Motors Acceptance Corporation (GM) initiated this claim and delivery action against the appellant Maxann C. McMinn (the consumer). We affirm.

The appellant consumer entered into an installment sale contract with GM for the purchase of a car. She allegedly defaulted on her payments, and GM declared the balance due and demanded possession of the vehicle. The consumer refused to turn over the car. The Lancaster County sheriff subsequently served on the consumer a Summons, Verified Complaint, Corporate Surety Bond of $10,800, and Circuit Court Order requiring the sheriff to take immediate possession pursuant to S. C. Code Ann. § 15-69-100 (1976). The sheriff was unable to take possession of the car because the consumer had moved it to York County. The York County sheriff then took the car upon order of the court and held it for three days. The consumer filed no replevin bond pursuant to Code § 15-69-140 (1976); hence, the sheriff delivered the car to GM.

The consumer answered the claim and delivery complaint with a "counterclaim"[1] under the Federal Truth in Lending Act, 15 U.S.C.A. § 1601 *et seq.* (1982), and a request for a pretrial hearing to determine which party should possess the car pending trial.

The trial court sustained GM's demurrer to the Truth in Lending "counterclaim" and request for hearing. The ap-

---

[1] This was characterized as a recoupment in *Tukola Associates, Inc. v. Moore,* 275 S. C. 199, 268 S. E. (2d) 293 (1980).

pellant contends that the court erred in so doing because the face of the pleadings revealed causes of action or defenses. We agree that these matters would have more properly been addressed on Motion for Summary Judgment. However, since the contract was attached to the complaint and made a part of this record, we have reviewed the merits of the controversy in the interest of judicial economy.

The trial court's treatment of the Truth in Lending issues and the request for a hearing is reprinted, as amended, as the directive of this Court.

"The Fourth Defense alleged GM's violation of Federal Reserve Regulation Z by failing to print the terms 'finance charge' and 'annual percentage rate' more conspicuously. The Court has examined the disclosure statement and finds that these terms are plainly more conspicuous and are clearly within the provisions of Regulation Z. In addressing issues raised in the Federal Truth in Lending Act, United States District Judge Robert F. Chapman held in *Sanders v. Auto Associates, Inc.*, 450 F. Supp. 900 (D.S.C. 1978), the following:

'The Act and regulations require that lenders clearly disclose loan terms to consumer borrowers and these disclosure requirements must be construed and applied in light of the congressional purpose of promoting the informed use of credit. Any disclosure made by a particular lender which comes under judicial scrutiny cannot be analyzed in a vaccum by a strict application of the language of the statutes and regulations. The disclosure requirements should be liberally construed to effectuate the congressional purpose of the Truth in Lending Act and applied in a manner which results in justice and fairness to both the lender and the borrower. Unfortunately, many of the Truth in Lending cases which have been instituted in this court have not been brought by plaintiffs who were misled or misinformed by the loan forms they attack. These plaintiffs have merely sought a windfall penalty by a lender by picking apart its loan form word by word in search of a technical deviation from the language of the statutes and regulations. The Truth in Lending Act was never meant to make the District Courts forums for word games between lenders and borrowers in which a borrower's attorney, who is adept at using legalese and arguing tech-

nicalities, is awarded a prize for himself and his client. In order to avoid such misuse of the Truth in Lending Act, this court will strongly construe its provisions against borrowers who were not misled by a lender's disclosure but merely seek a penalty for finding a technical problem with the loan form which could not have conceivably influenced his choice of credit.'

The idea that the disclosure requirements must be construed and applied in light of the purpose of promoting the informed use of credit has also been enunciated by the South Carolina Supreme Court in *Tuloka Affiliates, Inc. v. Moore*, 275 S. C. 199, 268 S. E. (2d) 293, 295 (1980), in which the Court pointed out that the purpose of the Truth in Lending Act is 'to assure meaningful disclosure of credit terms' so that the consumer can shop for credit on an informed basis. It is evident from the disclosure form in the present case that it encompassed the congressional purpose of promoting the informed use of credit. An examination of the disclosure statement shows that the finance charge, annual percentage rate, and the amount and method of computing charges payable in the event of default or late payments are sufficiently disclosed.

The consumer claims in the Fourth Defense that Regulation Z was violated by GM's failure to disclose the timing of payment schedule to repay the obligation. Under Section 226.18(g) of Regulation Z, a creditor must disclose the number, amounts, and timing of payment schedule to repay the obligation. GM submitted to the court a publication pertaining to Regulation Z of the Truth in Lending Act from the Board of Governors of the Federal Reserve System, amended to April 1, 1981. Appendix H-1 gives the credit sale model form promulgated by the Board, and Appendix H-10 is the same form filled out to indicate a sample for guidance. Under the credit sale sample, the Board of Governors has filled in the payment schedule as follows: 'Number of payments — 36; Amount of payments — $211.23; When payments are due — monthly beginning 6/1/81.' I note that the same language was used in the same way on the disclosure statement in this case. In completing the disclosure statement, the dealer complied with the model form that was promulgated by the Board of Governors of the Federal Re-

serve System. In *Matter of Black*, 411 F. Supp. 749 (D. Ohio 1975) the Court held that the creditor compiled with the provisions of the Act by disclosing the number and dollar amount of monthly installment payments. The Ohio District Court stated:

'The major concern of Congress in enacting this legislation — that the true cost of credit be revealed to the consumer — is implemented when the disclosure form includes the number and dollar amount of monthly installment payments. Precisely when during each month the installments are due is, of course, of interest to the creditor and debtor alike, and failure to provide such information to the debtor would be relevant to a court presented with the question of whether a default had occurred. But the inquiry under the Truth in Lending Act is not whether, under general principles of law, the debtor was adequately informed of all conditons pertinent to possible default. The question, rather, is whether that information required by the statute to be disclosed was in fact disclosed.

In *Matter of Black*, no day of the month for payments was stated in the disclosure statement.

Based upon the forgoing and my examination of the disclosure form, GM's demurrer to the Fourth Defense is sustained and that defense shall be removed from the Answer.

The consumer's Fifth Cause of Action denies GM's affidavits pursuant to Code Sections 15-69-30 and 15-69-100 (1976). It alleges that the automobile in question was never withheld, wrongfully or otherwise, and that the consumer at no point refused to voluntarily surrender possession of the vehicle; nor did she avoid efforts to obtain possession or to locate the vehicle.

This Court issued an Order on December 2, 1983, to the Sheriff of Lancaster County to take the property described. GM thereafter petitioned that the vehicle had been moved from Lancaster County to York County, and on the basis of that petition, the Court issued a second Order to the Sheriff of York County to take possession of the property. The return of the Sheriff of York County shows that the vehicle was taken into possession in York County.

In any event, if the consumer questioned the determination of the Court pursuant to Section 15-69-100 ordering immediate seizure, her remedy was pursuant to Section 15-69-140 permitting her at any time within three days after service or any time before the delivery of the property to GM to require the return thereof upon the giving to the Sheriff of a written undertaking. Section 15-69-140 provides, '(i)f a return of the property be not required by the defendant as herein and under the circumstances in Section 15-69-130 provided and within the time therein provided, it shall be delivered to the plaintiff, except as provided in Section 15-69-200 (Claim of Property by Third Person).' The case of *Guglieri v. Roman Tile and Marble Co.*, 158 S. C. 365, 155 S. E. 406 (1930), held that the sheriff must deliver the seized property to the plaintiff if the plaintiff has filed the required undertaking, unless the defendant files the required counter undertaking within three days.

The Fifth Cause of Action does not allege and it does not appear from the file that the consumer filed the required counter undertaking within three days, or at any time in this action. Nor did she move the court promptly to vacate its *ex parte* order. *See First Carolina Nat'l Bank v. A. & S. Enterprises, Inc.*, 277 S. C. 591, 291 S. E. (2d) 380 (1982); Code § 15-27-350 (1976). I therefore hold that the consumer is not entitled to a hearing on the question of the possession of the automobile before the trial of this case.

I therefore sustain GM's Demurrer to the consumer's Fifth Cause of Action and require that the allegations of the Fifth Cause of Action be removed from the answer and counterclaim."

The judgment below is, accordingly,

Affirmed.

LITTLEJOHN, C. J., and NESS, GREGORY and CHANDLER, JJ., concur.